IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

LINCOLN G.,  )
 )
      Plaintiff,  )
 )
vs.  )   Case No. 18-CV-585-FHM
 )
Andrew M. Saul, Commissioner of  )
Social Security,  )
 )
      Defendant.  )

## OPINION AND ORDER

Plaintiff, LINCOLN G., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance,

---

[1] Plaintiff Lincoln G.'s application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Christopher Hunt was held August 8, 2017. By decision dated November 14, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on September 6, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 39 years old on the alleged date of onset of disability and 43 years old on the date of the denial decision. He received his GED and past work includes fork lift driver and tube bender. [R. 23]. Plaintiff claims to have been unable to work since April 2, 2013, [R. 16], due to pain and infection in right foot, severe problems with right foot, right foot bleeds constantly, back pain, severe anxiety, severe depression, pain in shoulder, swelling, difficulty waking, and stomach problems. [R. 261].

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: degenerative joint disease of the right foot. The ALJ found Plaintiff's alleged degenerative disc disease and generalized anxiety disorder were non-severe. [R. 19]. The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work. Plaintiff cannot climb ladders, ropes or scaffolds; can occasionally climb stairs, balance, bend or stoop, kneel, crouch, and crawl. [R. 21].

The ALJ determined at Step Four that Plaintiff was able to perform his past relevant work as a fork lift driver and a tube bender. [R. 23]. Therefore, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. [R. 25]. Further, based on the testimony of the vocational expert, the ALJ determined at Step Five that there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 23-24]. The case was thus decided at Step Four with an alternative Step Five finding of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ: 1) failed to follow the law at Step Four of the Sequential Evaluation Test; 2) the RFC assessment is not supported by substantial evidence; 3) credibility findings are not supported by substantial evidence; 4) failed to develop and failed to follow the testimony of the vocational expert witness that was favorable to Plaintiff, and 5) the Decision in this case was rendered by an Administrative Law Judge whose appointment was invalid at the time he rendered his decision. [Dkt. 12, p. 4].

## Analysis

### Step Four

Plaintiff argues the ALJ erred by finding him capable of performing his past relevant work as a fork lift driver as he performed it. Plaintiff contends the ALJ should not have considered the job of fork lift driver because it was being performed with "reasonable accommodations." Plaintiff claims "reasonable accommodations" include working three

3

and one-half days[2] as opposed to five days each week which provides Plaintiff three and one-half days to recuperate. Plaintiff also takes breaks from sitting every 30 to 45 minutes. [Dkt. 12, p. 7].

At Step Four, the ALJ must determine whether a claimant's impairments prevent him from performing his past relevant work. *Wall v. Astrue*, 561 F.3d at 1052 (citing Allen v. Barnhart, 357 F.3d at 1142). "A claimant capable of performing past relevant work is not disabled within the meaning of the Social Security Act." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). Step Four has three separate phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC). In the second phase he must determine the physical and mental demands of the claimant's past relevant work. In the final phase the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted). While the claimant bears the "ultimate burden of proving that he is disabled," at Step Four the ALJ has a duty "of inquiry and factual development." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) (citing *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

As noted by the ALJ, Plaintiff testified that problems with his right foot began in 2003 after being struck by a vehicle while riding a horse. Surgical intervention and hardware

---

2  Plaintiff works two 12-hour days, one 11-hour day, and one 5-hour day each week.

4

placement were required. Plaintiff reinjured his right foot in 2012. Surgery was recommended but worker's compensation declined due to a pre-existing injury. Plaintiff was prescribed a surgical shoe and cane for balance.[3] [R. 21-22]. In August 2014 emergency records indicated Plaintiff's right foot was painful and chronic in nature. In April 2015 Plaintiff presented for evaluation in relation to a worker's compensation claim to Gary Lee M.D. Dr. Lee noted a deformity of Plaintiff's right foot with swelling and a lesion that had superficial crusting nonhealing over the lateral dorsum. [R. 22].

An internal consultative examination was performed in January 2016 by Harold DeLaughter, D.O. Dr. DeLaughter noted that Plaintiff required reconstructive surgery of his right foot in 2003. Physical examination revealed toe and heel walking was weak on the right. Plaintiff ambulated with a stable but antalgic gate at a decreased speed using a cane and surgical shoe. X-rays of January 2016 showed internal fixation with slight lucency around the screws; otherwise negative. [R. 22, 441].

The ALJ discussed the limited medical evidence and acknowledged it clearly showed a severe impairment to Plaintiff's lower right extremity. The ALJ also noted that there were no records showing Plaintiff received follow-up treatment after May 2015. [R. 22]. Activities of daily living included Plaintiff's ability to take a vocational class for operating a fork lift, no problems with self-care and personal hygiene, perform simple maintenance, attend doctor's appointments, shop, and drive. Moreover, Plaintiff was employed full-time as a fork lift driver. [R. 18, 20, 21].

---

3  Plaintiff reported that he had a brace since 2004 and a cane. Neither were prescribed by a doctor. [R. 286].

Contrary to Plaintiff's argument, the ALJ properly considered the job of fork lift driver. Plaintiff testified his schedule was the employer's normal schedule because they worked two crews. [R. 38]. Thus, Plaintiff was performing that job without "reasonable accommodations." The ALJ appropriately determined that Plaintiff could do his past relevant work and is therefore not disabled. The court finds there was no error in the ALJ's finding of non-disability at Step Four.

**Residual Functional Capacity**

The ALJ found Plaintiff capable of performing light work with some exertional limitations. Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence. Further, the ALJ's findings regarding Plaintiff's RFC appear to be "boilerplate" statements that include conclusions without an explanation as to how the conclusions were arrived at. [Dkt. 12, p. 8-9]. The determination of RFC is an administrative assessment, based upon all of the evidence of how the claimant's impairments and related symptoms affect her ability to perform work related activities. See Social Security Ruling (*SSR*) 96-5p, 1996 WL 374183, at *2, *5. The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. §

404.1545(a)(1). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id*.

Plaintiff claims that the ALJ lists Plaintiff's medical interventions in the record, but fails to weigh or link the evidence to his RFC.[4] The ALJ in this case reviewed the evidence, described Plaintiff's testimony, and discussed both the medical facts and Plaintiff's daily activities. [R. 18-22]. The ALJ's reasoning, and the support for that reasoning, is readily apparent. The ALJ sufficiently explained his RFC determination and supported his decision with substantial evidence. The court finds that the ALJ's physical residual functional capacity determination is supported by substantial evidence.

## Credibility

Although the Social Security Administration has eliminated the use of the term "credibility" from the agency's sub-regulatory policy, the agency continues to evaluate a disability claimant's symptoms using a two-step process: First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . . Soc. Sec. Ruling (*SSR*) 16-3p; Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL

---

4 Plaintiff again contends he worked with reasonable accommodations. The court has previously addressed Plaintiff's claims of "reasonable accommodation" and found that none existed.

1119029 at 2 (Mar. 16, 2016) (superseding SSR 96-7p; Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996)). The two-step process substantially restates the prior two-step process set forth in SSR 96-7, which was characterized by the Tenth Circuit as a three-step process set forth in *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987), the seminal case regarding credibility followed in the Tenth Circuit. See, e.g., *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012).

At step one of the process, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at 3. At step two, the ALJ may consider, among other things, a number of factors in assessing a claimant's credibility, including the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citations omitted); see 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, credibility findings "should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citations omitted).

Plaintiff argues that the ALJ's decision does not contain a sufficient credibility analysis. Plaintiff contends the ALJ discussed the medical and hearing evidence but failed to link said evidence and further weigh the evidence in his credibility findings. [Dkt. 12, p. 11-12]. In assessing Plaintiff's credibility, the ALJ took into account Plaintiff's severe impairment to the right lower extremity. The ALJ noted Plaintiff was working full time as a fork lift driver. X-rays of January 2016 showed internal fixation with slight lucency around the screws, otherwise normal. Further, there were no records showing Plaintiff received follow-up care after May 2015. [R. 18, 22-23, 441]. The ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## ALJ's Alternate Findings at Step Five

Plaintiff argues that because the ALJ failed to develop a proper RFC in this case it follows that he did not properly develop the vocational testimony in this case. [Dkt. 12, p. 14]. Although the court determined that the ALJ's RFC finding was without error, it will address Plaintiff's Step Five argument.

Plaintiff contends that the ALJ failed to ask the vocational expert witness a hypothetical question which incorporated the specific impairments of the Plaintiff, specifically the Plaintiff's true physical residual functional capacity – particularly his lack

9

of ability to stand or walk, or to sit more than 30 to 45 minutes, as well as his inability to work five days and his need to be accommodated at a job because of his impairments.

Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). In posing a hypothetical question, the ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ. See *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995) (citing *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (stating that the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

The hypothetical question posed to the vocational expert by the ALJ included limitations of lifting or carrying 20 pounds occasionally and 10 pounds frequently; sit for 6 hours out of an 8-hour day; no climbing ladders, ropes, or scaffolding; occasional climbing ramps or stairs. The ALJ's RFC assessment was based on the substantial evidence on record and accommodated Plaintiff's limitations in his ability to stand and walk (limited to 2 hours in an 8-hour workday) and sit (6 hours in an 8-hour workday). The hypotheticals posed by the ALJ to the vocational expert were appropriately based on the RFC assessment. The court holds that the hypothetical questions posed to the vocational

expert were not deficient. Thus, this court finds that ALJ's reliance on the vocational expert's testimony was proper. Accordingly, the ALJ appropriately determined that Plaintiff could do his past relevant work and is therefore not disabled.

## Appointments Clause Claim

Plaintiff argues that the ALJ who decided his case was not appointed in compliance with the Appointments Clause of the Constitution.[5] [Dkt. 19, p. 15]. The Commissioner does not dispute that the ALJ was not constitutionally appointed but argues that the court should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on his claim for benefits. To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process. Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed. The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[6] These cases rely

---

[5] The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." U. S. Const. art. II, § 2, cl. 2. It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." *Id*.

[6] *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's

11

on the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency. They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief. 138 S.Ct. at 2055. These cases find that the Social Security claimant, having not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge. The Commissioner's brief relies on similar arguments.[7]

A small number of cases rely on the Court's analysis in *Sims v. Apfel,* 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments Clause issue was not forfeited.[8] In *Sims* the Supreme Court concluded that Social

---

recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Comm'n r Soc. Sec.*, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018)(challenge under Appointments Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

[7] The Commissioner also cites five regulations it contends supports requiring issue exhaustion. None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

[8] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), *Ready v. Berryhill*, 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred).

Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. In reaching this conclusion, the Court considered the following factors.[9] First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration. Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion. Third, the reasons why courts generally impose issue exhaustion requirements do not apply to the non-adversarial process of the Social Security Administration. Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement. *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process. The statute still does not require issue exhaustion. In the 19 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion. The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

---

[9] The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

13

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

The court finds that at the time the decision in this case was entered, November 14, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution. The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security Administration. As a result, the ALJ's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 20th day of March, 2020.

_Frank H. McCarthy_
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE